WATKINS v. VAUGHN et al.    (No. 496.)

(Court of Civil Appeals of Texas.    Beaumont.
Nov. 13, 1919.)

ANIMALS ⬥⟳55—STOCK LAW IS LOCAL OR SPE-
CIAL AND MUST BE PLEADED AND PROVED.

Where plaintiff in suit for damages done to
his crops by defendants' hogs did not allege or
prove that his crops were protected by a good
and lawful fence, he could not recover, where he
failed to allege and prove that the county judge
published or posted, as required by Rev. St.
1911, art. 7221, notice of result of election, put-
ting the special stock law into effect; it being
necessary to allege and prove each of steps re-
quired by article 7209 et seq., where special
stock law is relied upon.

Appeal from San Augustine County Court;
E. T. Anderson, Judge.

Suit in the justice court by Pink Vaughn
and another against W. W. Watkins. Plain-
tiffs had judgment in the justice court, and
on appeal to the county court they again
prevailed, whereupon the defendant appeals.
Reversed and rendered.

J. W. Minton, of Hemphill, and Davis &
Ramsey, of San Augustine, for appellant.

Wm. McDonald, of San Augustine, for ap-
pellees.

BROOKE, J.    This was a suit filed in the
justice court of precinct No. 1, San Augustine
county, Tex., on September 15, 1917, by Pink
Vaughn and J. O. Payne, as plaintiffs,
against W. W. Watkins, who is appellant
here. The case was tried in the justice court
on November 26, 1917, and resulted in judg-
ment in favor of appellees for $110, with
interest and costs of suit. The case was
duly appealed to the county court of San
Augustine county. In the county court plain-
tiffs filed a trial amendment, and the case
was tried on December 4, 1918, resulting in
judgment in favor of appellees for the sum
of $119. Appellant, in due season, filed his
motion for new trial, also amended motion
for new trial, which amended motion for new
trial was heard by the court of December 7,
1918, and was by the court overruled, to
which action of the court the defendant in
open court excepted and gave notice of ap-
peal to this court.

There is an agreed statement of facts in
this case and of the issues made in the case,
and filed on December 24, 1918, and appel-
lant presents his case under said statement
of facts, as follows:

"We, the parties to the above styled and
numbered cause, whose names are signed hereto,
being all of the parties to this suit, hereby agree
that the following is a brief statement of this
case and of the facts proven on the trial thereof:

"(1) The plaintiffs brought this suit in the jus-
tice court of precinct No. 1, San Augustine

county, Tex., alleging damages to their crops
in the sum of $110, alleged to have been caused
by the depredation of defendant's hogs running
at large on their premises, which were alleged
to be in territory where the stock law. prohibit-
ing hogs, sheep, and goats from running at
large, was in force.

"The defendant answered by general exception
and general denial, and the case was tried in
the justice court and resulted in a verdict for
plaintiff. It was appealed to the county court,
and trial there. resulted in a verdict for the
plaintiffs for the amount sued for based upon
special issues found by the jury. The special
issues submitted to the jury covering only the
question of whether the crops were damaged by
defendant's hogs, and, if so, the amount of the
damage. The defendant gave notice of appeal
to the Court of Civil Appeals of the Ninth Su-
preme Judicial District.

"(2) The following facts were proved:

"(A) That the crops were damaged as alleged,
by defendant's hogs, and that the value of the
crops so damaged was as prayed by plaintiffs.

"(B) Plaintiffs introduced in evidence an or-
der of the commissioners' court, made at the
November term, 1902, directing the holding of
an election to determine whether or not hogs,
goats, and sheep shall be permitted to run at
large in the subdivision of the county of San
Augustine as described in the petition of the
numerous freeholders this day presented to the
court. (Then follows the petition giving the
boundaries, which include the premises in the
plaintiffs' petition and on which the damages
are alleged to have occurred.) Which said peti-
tion contains the names of more than 50 free-
holders.

"(C) Plaintiffs also introduced the following
order or declaration of the results of said elec-
tion found in the minutes of the commissioners'
court:

" 'In vacation January 19, 1903. On this day
the county judge in the presence of the sheriff,
Co. clerk & John Thompson, J. P. of precinct
No. 1, proceeded to count the votes cast at the
stock law election held at Mount Nebo Church
about six miles east of the town of San Augus-
tine, and on the 20th day of December, 1902,
the result of said election being 43 votes for
and 6 votes against, and the county judge or-
dered that hogs, sheep and goats be prevented
from running at large in the territory described
in election order after thirty days from this
date. The boundaries are as follows: Begin-
ning at a point in the public road leading from
San Augustine to Patroon in Shelby county,
where the east boundary line of the corporation
of San Augustine crosses said road. Thence
easterly with said road to the west boundary
line of the J. B. Dillard survey of land. Thence
southerly with said Dillard's west boundary
line. Thence easterly with John Chumley and
J. B. Dillard's surveys to the S. W. corner of
the Thomas Wright survey. Thence continuing
in an easterly direction with the Thomas Wright
south boundary line and the P. A. Sublett north
boundary line to the N. E. corner of the P. A.
Sublett survey. Thence southerly with the divi-
sion line of the P. A. Sublett and M. Ussery sur-
veys to the S. E. corner of the P. A. Sublett
survey, being corner No. 9, of said survey.
Thence easterly with the south boundary line of

the M. Ussery survey to the west boundary line of the Enoch Jones survey. Thence in a southerly direction with Enoch Jones west boundary line to the S. L. Young north boundary line. Thence easterly with the S. L. Young north boundary line to a point due north from Tom Sublett's N. W. corner of land. Thence S. to the N. W. corner of the Tom Sublett survey. Thence south with the Tom Sublett west boundary line to the S. W. corner of the Tom Sublett survey. Thence easterly with the Tom Sublett south boundary line to the S. E. corner, continuing thence east across the S. L. Young survey to the Cypress creek. Thence down Cypress creek with its meanderings to Pollygoche creek. Thence down Pollygoche creek with its meanderings to the west boundary line of Sabine county. Thence in a southerly direction with the division line of Sabine and San Augustine counties to the north boundary line of beat No. 4, San Augustine county. Thence westerly with the dividing line of beat No. 4 and beat No. 1, to the public road leading from San Augustine to Jasper. Thence in a northerly direction with said road to the south boundary line of the corporation of San Augustine. Thence easterly with said corporation to the S. E. corner of the same. Thence northerly with the east corporation line to the beginning'—said above field notes embracing the premises where said damage was alleged to have been done.

"(3) The following issues of law are involved in this case:

"(a) The defendant lays down the proposition that it is necessary for the plaintiffs in this case to allege and prove: First, that their crops were protected by a good and lawful fence; or, second, that they must allege and prove each of the steps required by the statutes to be performed to put the special stock law into force and effect, and that this was not done, in this, that no effort was made to show that the county judge published the result of the election as required by article 7221 of the Revised Civil Statutes, nor that it was ever posted in any manner. The defendant contending that this proclamation was never made, nor posted, and that therefore the stock law was not enforced in the territory where plaintiffs' crops were situated.

"The above issue was raised in due season by the defendant, in offering objections to the testimony and the introduction of the order granted the election, and the order declaring the result, also any motion for instructed verdict for defendant to the court's refusal to give which proper exceptions were taken, also in motion for new trial.

"We agree that this case upon appeal may be decided upon this agreed statement in accordance with the provisions of the statutes, and determined accordingly."

The above statement was agreed to by counsel for both appellant and appellees, and approved by the court.

Appellant's assignments will be grouped and considered together, being as follows:

(1) The court erred in refusing to give the special requested charge of appellant, directing a verdict in favor of the defendant.

(2) The court erred in permitting the appellees to offer in evidence, over the appellant's objection, the order granting the spe-

216 S.W.—31

cial stock election and the order declaring the result of said election, because these steps in putting the special stock law in force had not been pleaded by appellees.

(3) The court erred in overruling appellant's motion for new trial, in which appellant set up and pointed out the fact in the second paragraph of said motion that no attempt was made to prove that plaintiffs' crops alleged to have been damaged by defendant's hogs were inclosed with a legal fence, or that the proclamation giving the alleged hog law into effect was ever made or posted as required by law, which proclamation and the posting thereof was a prerequisite to the validity of the stock law.

It is necessary for the plaintiffs, in a suit for damages to crops by hogs, to allege and prove: First, that their crops were protected by a good and lawful fence; or, second, they must allege and prove each of the steps required by the statutes to be performed to put the special stock law into force and effect.

It is agreed that the plaintiffs introduced evidence that their crops had been injured to the extent claimed; that the special stock law election was properly ordered; that an order declaring the results was made by the county judge in the presence of three witnesses. No effort was made to show that appellees' crops were protected by a lawful fence. Further, no effort was made to show that the county judge ever published or posted in any manner the result of the election, as required by article 7221, Revised Civil Statutes.

Articles 7209 et seq., Revised Statutes, provide a method by which the legally qualified voter of a given territory may proceed to prevent the running at large of hogs, sheep, and goats in such territory. These statutes provide that there must be first a legal petition and which shall contain certain requisites; second, an order of the county judge for the election with certain requisites which are fully set out in article 7214. Subsequent articles provide the manner of holding and making returns. Article 7220 provides that the return shall be opened and tabulated and counted by the county judge in the presence of the county clerk and at least one justice of the peace of said county, or two respectable freeholders; that, if a majority of the votes cast be for the stock law, the county judge shall immediately issue his proclamation declaring the results, which proclamation shall be posted at the courthouse door, and after the expiration of 30 days from its issuance it shall be unlawful to permit to run at large within the limits designated any animal of the class mentioned in said proclamation. Such law is a local or special law, and, when the law itself comes into question or is sought to be enforced in the courts of this state, it is necessary to allege and prove that the necessary steps were taken to put

such local or special law into effect. In this case the only allegation made by the plaintiffs is contained in the citation in which they allege that appellant lived within the limits or on the line of the limits of the territory wherein such animals as hogs were prohibited from running at large, and that, notwithstanding the fact that he was living in said territory, he negligently permitted his hogs to run at large without regard to the rights of plaintiffs, whose farm was located within the territory of where the hogs were running at large. In the county court plaintiffs filed a trial amendment, in which they alleged that the Brooks farm worked by Vaughn was in the territory where the law was in force, prohibiting hogs, sheep, and goats from running at large. As shown by the agreement in this case, no effort was made to show that appellees had a lawful fence around their premises, nor was any proof offered that the proclamation prescribed in article 7221 was ever made, issued, or posted.

In the case of City of Austin v. Walton, 68 Tex. 507, 5 S. W. 71, our Supreme Court used the following language:

"The courts do not take judicial knowledge of the ordinances of municipal corporations. They stand upon the same footing as private and special statutes, the laws of other states, and of foreign countries, and must be averred and proved like other facts. * * * In pleading private statutes the common-law practice was to recite so much of the act as was pertinent to the issue made. * * * The same strictness should not be required under our system as was demanded by the rigid rules of the common law. Yet the substantial principle must be complied with that a party, in order to recover, must make known to the court, through his pleading and by his proof, every law and fact essential to support his action, of which the court does not take judicial notice; and his pleading should state the facts, and not the conclusions the pleader deduced from them. The petition in this case fails to advise the court of the contents of the ordinance relied upon, either by quoting its language, or stating the substance of its provisions. It is simply averred, in effect, that by virtue of article 103 plaintiff was entitled to receive 10 per cent. upon money collected from fines by the city. This is a conclusion of law purely, and is not sufficient. The contents should have been stated, so that the court could judge from the provisions of the ordinance itself whether plaintiff was entitled to receive the commission claimed or not."

The above has been quoted in order that the profession may know what the highest court in our state says about private ordinances and laws which do not embrace the entire state. It is well known that these hog, sheep, and goat law provisions are not applicable to every county in the state, and in some respects are local in their nature. However that may be, it is necessary to plead and prove the facts relied on in each individual case, and the pleader is bound to plead and prove the facts with reference to putting the law into effect by the commissioners' court of the particular county, in order that it may be determined whether or not the law was in force in that particular locality. Publishing the result of an election, as required by the statute, is a prerequisite to the validity of the law, and it is necessary to allege that a legal petition for the election was presented to the court, an order for the election and a declaration of the result by the county judge, and publication 30 days prior to the prosecution of the suit.

In this case, unless the plaintiffs showed they had a lawful fence, they cannot recover, unless they plead and prove all of the steps necessary to putting in force a special stock law in the territory where their premises were situated. This has not been done, and in our opinion the judgment of the lower court is not supported by the law, and this case should be reversed, and judgment rendered in favor of appellant, and it is so ordered.